FRANCIS L. FANNING v. ED. FUNCHES ET AL.

TAX ASSESSMENT. *Approval by Board of Supervisors. Act of July 31, 1875.*
   The act approved 31st of July, 1875, entitled "An act legalizing the return of assessment-rolls, and to extend the time of returning the same," did not have the effect to validate the illegal act of a Board of Supervisors in meeting on the 12th of July, 1875, and approving at such unauthorized meeting, an assessment-roll returned on the 24th of June. That act was not intended to cure any illegal act of the Boards of Supervisors, but only the failure of assessors to return their assessment-rolls at the time prescribed by law.

APPEAL from the Circuit Court of Copiah County.

Hon. T. J. WHARTON, Judge.

On the 7th of April, 1882, Francis L. Fanning brought this action of ejectment against Ed. Funches and W. P. Barnes, to

obtain possession of a certain tract of land, which he claimed under a tax-title. These facts were developed on the trial of the case: The land in controversy was sold to the State in 1878 for the taxes of 1877. It was subsequently bought from the State by the plaintiff. At the time of the sale to the State it belonged to the defendants. The assessment-roll upon which the sale was based was returned to the clerk of the Board of Supervisors of the county, and filed on the 24th of June, 1875. The Board of Supervisors met on the 12th of July, 1875, and continued in session to and including the seventeenth day of that month, during which time the board heard objections to the assessment-roll, and corrected and equalized the assessments, and, on the last named day, the board made an order receiving and approving the assessment-roll, as corrected and equalized. This meeting of the board was not called as a special meeting, no notice thereof having been given. The judgment of the court below was in favor of the defendants, and the plaintiff appealed to this court.

*Nugent & McWillie*, for the appellant. ·

The Board of Supervisors of Copiah County did not meet on the first Monday in July to receive the assessment of lands for that county, so they met on the 12th of July, 1875, heard objections to the assessment-roll, equalized, corrected and received the same. The assessment was not certified according to the form prescribed by statute, but was certified to be a true and correct assessment. All these minor objections have been cured by the Legislature. On the 31st of July, 1875, the act "legalizing the returns of the assessment-rolls and to extend the time of returning the same," was approved. Act of July, 1875, p. 10. The first section of the act provides that all assessments, both real and personal, which have been made and returned to the Board of Supervisors of the respective counties, and have been received and approved by the board, either with or without changes and corrections, are declared to be as valid and binding as if made within the time prescribed by law, except that when ten tax-payers in one

county should desire to have the same re-examined it might be done. The exception denotes the only limitation upon the intention of the Legislature in passing this curative act. The assessment in this case was made and returned to the board and was examined, equalized and received, and the clerk advised to make copies fourteen days before the act was approved. There is no doubt as to the authority of the Legislature to cure irregularities in the assessment of property, — certainly before any sale for taxes. What could have been done in the first instance, may be done afterwards. The decided cases on this subject are now stated : Cooley on Tax. 225, 230, and cases cited ; *The People* v. *McCreary*, 34 Cal. 432 ; *The People* v. *San Francisco Savings Union*, 31 Cal. 132 ; *Grim* v. *School District*, 57 Pa. St. 433 ; *Wilson* v. *Buckman*, 13 Minn. 441 ; *The State* v. *Reed*, 2 Vroom, 133 ; *Tucker* v. *Justices*, 34 Ga. 370.

*Willing & Sexton*, for the appellees.

While the Legislature has the power to cure minor defects and irregularities in the assessment of property, any such exercise of legislative authority must be subject to the condition that it does not disturb vested rights. Wade on Retro. L., sect. 264. A statute attempting to legalize void assessments was held unconstitutional because the invalidity of the assessment consisted in a failure by the assessor to make return thereof within a prescribed time. Had the return been made as required by law, the tax-payers would have had one month to inspect the assessor's books, and make objections to the assessment. This right was of value to the tax-payer, and it was not within the power of the Legislature to deprive him of it by legalizing an assessment returned after the expiration of the time. *Marsh* v. *Chestnut*, 14 Ill. 223 ; *Billings* v. *Detten*, 15 Ill. 218 ; *Lennon* v. *Mayor, etc.*, 55 N. Y. 361 ; *Forster* v. *Forster*, 129 Mass. 559 ; Wade on Retro. L., 264, 265 ; 7 Conn. 550 ; Blackwell on Tax Tit., 118, 119, 120, 121, 122, 123, 124. There is, however, a more fatal objection to the assessment under which the land

was sold. The assessment-roll had never been approved
by the Board of Supervisors. If the court should be of
opinion that the order entered on their minutes on the seven-
teenth day of July, 1875, receiving the roll, etc., amounted to
the approval, we insist, that said order was void, as the Board
of Supervisors had no authority to hold any but a special
meeting at that time, to be called in the manner directed by
law, their order in receiving the roll was void and of no effect,
and had no more force than if made by any other assembly of
individuals. The special act of the Legislature of July 31,
1875, undertook to legalize assessments that had been returned
to the Board of Supervisors of the respective counties, and
that had been received and approved by said boards, etc.
The act, therefore, could not apply to this assessment, as it
had not been approved by the Board of Supervisors of Copiah
County, and the order made by them was at a time when they
had no jurisdiction to act, and was a nullity. Taxation with-
out assessment must be incapable of confirmation, because
apportionment is indispensable. And if the party has been
illegally deprived of the opportunity to be heard in opposition
to the assessment, the defect is jurisdictional. Cooley on
Tax. 227, 228, and authorities cited. It is evident that the
Legislature did not intend, by the special act of July 31,
1875, to dispense with the necessity of the return of the rolls
to the Board of Supervisors, and their approval by the boards
at a meeting authorized by law. This not having been done,
the assessment in this case was void under the provisions of
the special act. Our Boards of Supervisors are partly legis-
lative and partly judicial in their character. They are judicial
as to their times of meeting. Their terms are fixed by law,
and mode of calling special terms carefully prescribed by
statute, and their acts at a meeting not appointed by law, or
not convened in the proper manner, are as destitute of author-
ity as would be the judgments of other courts rendered at a
term unlawfully held. *Smith* v. *Nelson*, 57 Miss. 139 ; *Jones*
v. *Buford*, 26 Miss. 194. In *Smith* v. *Nelson* this court held

that the Boards of Supervisors had no power to make a levy of taxes at an adjourned meeting. It becomes a question of jurisdiction, which no subsequent legislation can cure, and applies to the approval of the rolls as well as to the levy of taxes.

CAMPBELL, C. J., delivered the opinion of the court.

The failure of the assessor to deliver the assessment-roll of lands to the clerk of the Board of Supervisors on or before the 1st of June, 1875, as required by the act approved March 6, 1875 (Acts 1875, p. 50), was cured by the act approved July 31, 1875 (Acts Special Sess., p. 10), but the meeting of the Board of Supervisors on the 12th of July, 1875, at which it received and approved said roll, was unauthorized and illegal, and its action thereon was void, and it was not validated by the act of July 31, 1875, above cited, because it is clear that the legislative intent was to cure only the non-delivery of assessment-rolls within the time prescribed by law, and no reference was made to action of Boards of Supervisors. The law required the return of the rolls to the clerk of the Board of Supervisors by the 1st of June, and that they remain on file in his office for inspection and objection until the first Monday of July, when the Board of Supervisors was required to meet " to hear objections, to equalize the assessment and to examine and receive the same." Acts 1875, p. 50. The Code of 1871, sect. 1684, which was amended by the act of 1875, just cited, required the roll to remain on file in the clerk's office until the time prescribed for the meeting of the board to examine and receive it, so that any person dissatisfied with any assessment might file objections thereto in writing, to be considered by the board at the prescribed meeting, and sect. 1685 made said rolls, after being examined and corrected as aforesaid, final and conclusive as to the assessments contained therein. The only effect on the Code of the amendatory act cited, was to change the dates for the return of the assessment-roll to the clerk's office and for the meeting

of the Board of Supervisors to act on objections filed to assessments, and to equalize and receive the assessment. It was still the law that the roll should remain on file in the clerk's office for objections in writing to any assessment it contained, from the time it was to be delivered to the clerk until the meeting of the Board of Supervisors required to be held on the first Monday of July. It was the contemplation of the law that the property-owner should have the time from the delivery of the roll to the clerk, as required, to the meeting of the Board of Supervisors at the required time, in which to file objections to any assessment. It was found that in some instances assessors had failed to return the rolls as required, and by the act approved July 31, 1875, and cited above, it was declared that all assessments, which had been made and returned and received and approved by the Boards of Supervisors should "be as valid and binding as if made within the time prescribed by law," and it was provided that where the assessment was improperly made, or the rolls had not been received and approved, they were to be filed with the clerk, on or before the fourth Monday of August, at which time the Boards of Supervisors were to meet and act on the rolls. It is manifest that the Legislature assumed that in some instances assessment-rolls had been returned, and were received and approved by said boards on the first Monday of July, that being the time prescribed therefor, and it declared them valid, because of such approval by the boards and then made provision for the instances in which the assessment-rolls had not been returned and acted on by the Boards of Supervisors, but the curative effort of the enactment was directed only to the time when the rolls had been returned, and not to the meeting of the Boards of Supervisors, which, we may fairly assume, was supposed by the Legislature to have been held on the first Monday of July, the time prescribed therefor by the law, and no effort was made in the curative act to cure unauthorized and consequently illegal meetings held by the Boards of Supervisors for action on assessment-rolls. Such

meetings were not attempted to be validated, and assessment-rolls received and approved at such a, meeting were not in the contemplation of the Legislature, and not embraced by the curative act of July 31, 1875. It follows that the assessment-roll of lands in Copiah county in 1875, returned to the clerk of the board on the twenty-fourth day of June, and acted on by the Board of Supervisors at an unauthorized meeting commenced on 12th of July of that year was not embraced by the act of July 31, 1875, above cited, and is to be judged by the facts of its return and approval as stated, without regard to said curative act, and as it was essential to the validity of the assessment that the roll should have been returned, and been dealt with as directed by law as to all that pertained to the right to have the roll on file in the clerk's office for inspection and filing objections to any assessment, it must follow that this assessment was not valid, and that all sales of land under it were invalid.

Affirmed.

Judge Cooper took no part in this decision.